Mr. Horstman, good morning. Good morning, Your Honor. May it please the Court, my name is Pete Horstman and I represent James Cameron on appeal from his re-sentencing before Judge Woodcock in the United States District Court for the District of Maine. Since two-thirds of this panel is very familiar with the facts of this case, I would dispense with the recitations since I suspect the government will spend a great deal of time in the facts and proceed right to what we say the disparity was and why Judge Woodcock didn't even engage in the analysis required, which we say was procedural unreasonableness and move on to substantive unreasonableness. We were served yesterday with an excellent reminder of how disparate James Cameron's sentence was when the Supreme Court announced its opinion in United States v. Nichols. Not that the law of that case has any applicability here, but I was struck by the facts of that case in which Mr. Nichols was sentenced to a period substantially less than Mr. Cameron for what amounted to a more serious and egregious violation involving interstate travel with intent to engage in sex with a minor. There's absolutely nothing in the record before this Court which indicates that Mr. Cameron ever had any intent, any intentions, plans or otherwise to engage in that behavior. He was convicted of receipt and possession of child pornography and the aggravating circumstances which usually result in the types of sentences that Mr. Cameron received. He also received 127 months less than he could have gotten. He could have. How does that compare with the case you just read yesterday? Well, in Nichols the guidelines are different. In Nichols the guidelines are different because they don't apply. Well, I wasn't speaking so much as to the amount as to the fact that he got a substantial reduction from what he could have gotten. Mr. Cameron or Mr. Nichols? Mr. Cameron. Mr. Cameron did receive a reduction and by the Court's own admission at sentencing he wanted to give Mr. Cameron the same 70 month sentence reduction that he had given him at the first sentencing hearing, but we had raised that issue on appeal and this Court had remanded back for resentencing when it had vacated 6 of the 13 original convictions. It's hard to say the 70 month reduction is not sufficient, but you have to look at the other cases nationally where individuals with less serious and more serious, even egregious aggravating factors are sentenced to more time or have their guideline calculation higher than Mr. Cameron's and then are sentenced to 70 months or 60 months, which would be the mandatory minimum in this case. That's one of the many red flags here that I think this Court can focus on is that this sentence is above the mandatory minimum that would the analysis that the District Court engaged in was to look at his own cases, his own cases from the District of Maine. Well, in fairness, you raised sentencing disparity, which is one of the 3553A factors. It's just one of them and the District Court looked at the case most familiar with, which is the cases which he sentenced. The District Court did consider your national argument, but you had simply provided a sort of list of cases with no basis for concluding that they were identical to the cases that the judge did consider quite closely. Now, your argument appears to be that every district judge is required to look at every case nationally in considering this question of disparity. The judge did look at disparity. He distinguished the cases that he was most familiar with, and you're saying it's procedurally unreasonable unless he looks at every other case in the country? No, I'm not saying that, Your Honor. We don't have the resources available to do that, but what he didn't do was look at any case nationally, and that was unreasonable. He looked at just his own cases, and even then he didn't provide a fair analysis of what he knew the facts to be. I'm sorry, so what is it he should have done that he did not do? He should have taken... This is a very experienced sentencing judge, and the assumption that he doesn't know national case law has no basis that I can see in the record. Well, he is a very experienced judge, and I'm not taking issue with that at all. The issue is that this Court has previously disagreed with his sentences in child pornography cases. And it has nonetheless deferred to the District Court's judgment. I understand that, but I think what Sentencing Counsel did here was put before this Court a pristine record of what the national database looks like for this type of child pornography cases versus what Judge Woodcock was willing to do. And I think what, at a minimum, Judge Woodcock should have done was look to the list of 49 pages of cases that were provided and culled out the ones that looked the most familiar to see whether or not there was any guidance to be gleaned from them. And they're not just states from all over the country. There's Nebraska cases. There's Florida cases. It's not just one geographical area. And he limited himself to his own cases in Maine, and then... Did Sentencing Counsel do that? I mean, did he select the cases from his list that he thought were substantially similar and do the drill down for the judge? He did that with individual enhancements under the Child Pornography Guidelines. So, for example, he addressed those cases where the images were more than those that Mr. Cameron was convicted of being in possession or receiving. He addressed cases where there was what is evidenced that the defendant had committed or attempted to commit an act of sexual violence against a child. There are even cases... I think the King case, which is Judge Woodcock's own case, is a case where the defendant, Mr. King, produced his own child pornography. That's a separate statute. Punishments for that are more serious. And that's not something that Mr. Cameron is alleged to have engaged in. So even when he analyzed his own cases respectfully, he didn't do what he said he did. He didn't do a fair job of looking at his own cases and explaining the disparity. And I think that's the problem that we're addressing here. He had to do the work. He had to tell us what it was that he was looking at with each of the cases that he was considering and explain why Mr. Cameron needed twice the sentence that Mr. King did. And then we received the benefit this summer of a magistrate's decision in Maine, which took it a step further in King. Mr. King was back before this court. This court indicated again it was sympathetic to the national trend that these cases were over-evaluated by the guidelines. But this court sustained its conviction. The magistrate in ruling on a post-appeal motion indicated that Judge Woodcock had found during the sentencing proceeding, the original sentencing proceeding, that Mr. King had violated the conditions of his release and had lied to the court during the sentencing hearing. And these are two potential enhancements that Mr. King didn't receive at his sentencing. So while Judge Woodcock was explaining to Mr. Cameron and his lawyer at the sentencing hearing that King was not related, it was actually Judge Woodcock who was in possession of additional information which made King more like Mr. Cameron's case because there were enhancements that were not imposed as part of Mr. King's sentence. And that is really where the crux of the issue lies here, is even though Judge Woodcock said he did the work, he didn't. And he's got to spell that out. And we're asking this court to remand the case back to the District of Maine for resentencing. Thank you very much. Thank you. Ms. Bunker, good morning. Your Honor, may it please the Court, Renee Bunker on behalf of the United States. Mr. Cameron remained after remand convicted of two counts of transportation of child pornography, four counts of receipt, and one count of possession. And it is hard to say that a 70-month variance from the properly calculated guideline range is unreasonable. Indeed, it was a 127-month variance from the properly calculated guideline range. The 70 comes from the hypothetical range that, by the way, doesn't appear in the judgment, doesn't appear in the court's findings of fact or statements of reasons that would go to the commission to create the data upon which the appellant wants to form this sentence. And Judge Woodcock, with all due, let's just start with a number of images just briefly. It seems like the appellant is all about looking at real offense conduct, except when it comes to his own offense. Because the number of images on remand, it was a confrontation clause issue, as the Court knows. And that issue by no means meant that Mr. Cameron did not commit those transportation counts offenses. It did not mean that he didn't transport that child pornography, and it didn't mean that those victims fell out of Mr. Cameron's real offense. All right. So he got a break because the judge did not consider other relevant conduct, which is different than the ruling on whether there was a confrontation clause violation or not. The judge could have counted all of those images, and the judge decided not to. Okay. But your opponent's argument is that if he comes before a court with a list across the country of 50 or 60 other cases, there is a burden on the judge to look at those cases and distinguish them. What do you say to that proposition? Say that the court is required to look at all of the statutory, well, first calculate the range and consider all of the statutory factors. And to say that Judge Woodcock did not do the work in this case is, with all due respect, a serious distortion of the record. There's no one but Judge Woodcock who has lived with this case for seven years, read 100-plus pages of sentencing materials the first time around and probably 100-plus pages of sentencing materials the second time around. He clearly read the defense memoranda, the summaries that were presented. And I don't think busy sentencing judges need to go in and read the 60-plus cases that I quickly counted in the 49-page memoranda to reach a both procedurally sound and substantively reasonable sentence. And it's clear in this case that Judge Woodcock and discretion, we do point out, and the reason I pointed out the guideline, I mean the images issue and the hypothetical range, is not to say Judge Woodcock erred. I'm just saying that Mr. Cameron, too, got some breaks that won't be factored into that data, just like Mr. King perhaps got some breaks. And those two, Mr. King didn't have sadomasochistic images. He didn't get, he wasn't transporting child pornography. As Judge Woodcock, I think, intimated in the first sentencing, he didn't put the victim on the Internet to live in perpetuity knowing that her abuse had been spread across the Internet. So they are not similar in situated. Judge Woodcock here, I think it's clear if you look at the first sentencing transcript, the second, and Judge Woodcock's transcripts on these cases in general, his focus is first and foremost is the victims. And he is not required to weigh each of those statutory factors equally. And he can, I reread chapter one of the guidelines. And it, not that, this court's case law and the Supreme Court, of course, has made abundantly clear that discretion does not mean, discretion means that different judges may exercise their discretionary powers differently. And that Judge Woodcock, upon reading of these transcripts, he clearly looks to the victims first and foremost. He looked at the nature of the images that Mr. Cameron was dealing in. He looked again at the verbal pornography and the live chats that Mr. Cameron was having. He looked at a number of aggravating factors, including his flight that was a, and sort of a theme of obstructive contempt of court conduct that started with the child pornography and his role as one of the lead prosecutors in the state of Maine and conducting this, committing these crimes while on duty, purporting to be at work. So it was a theme of obstructive, a number of aggravating factors that Judge Woodcock articulated quite well. Yes, Judge Thompson. So avoiding unwarranted sentencing disparity is a consideration. And so I'm trying to figure out if the court is supposed to take that into consideration, how does it do it if it figure out if there's reason to differ? This, it absolutely is a consideration. And it was front and foremost in Judge Woodcock's consideration in the first, and Judge Woodcock talked about Stone, this court's opinion. And then in the second sentencing hearing, he made it clear that's the heart of this issue is the disparity that might be created by these harsh guidelines, or sort of out of whack, I think is what Judge Woodcock called them. And so he was clearly very much aware of the need to consider that explicitly. So it was the other theme running through both sentencing hearings. And with all due respect, I think it's pretty clear that Judge Woodcock incorporated that concern within his what proved to be a 127-month downward variance. I think Mr. Cameron's going to Judge Lynch's other comment. He was proposing a new methodology of how to go about sentencing. And I seriously doubt that courts are required, busy sentencing courts are required. If you go to page 30 of the appellant's brief, he sets out this proposed reply brief methodology where courts are supposed to sort of gather all of these and compare, according to page 30 of the reply brief, all potential charges before imposing a sentence on the defendant before the court, all relevant conduct, all potential enhancements, and then also disregard all artificial guideline ranges that might have been the product of a negotiated plea agreement or other factors. And the reality is we don't know with, say, the mean sentence or the median sentence that's useful data, but in terms of it's the product of other courts' discretion. And we don't know the various factors that went into that, just like the hypothetical range and the decreased images that went into Mr. Cameron's sentence that may not appear in that commission data. I just submit that that's an impossible, that would be a monumental task for the district sentencing courts to undergo and I doubt that that's what's required to produce a procedurally sound and substantively reasonable sentence. So perhaps the answer is that we get these high sentencing ranges because of the policy considerations that the sentencing commission has established and maybe there needs to be advocacy on that front as opposed to seeking relief here or in the district court. Well, I think it's not a secret that there is a lot of dismay over what the child pornography guidelines don't seem to be working. And they are not necessarily a function of the commission's historical role in terms of setting them based on data. And there are multiple ways to go up, just where were we with the crack cocaine guidelines and how the evolution of this work in progress pans out now with courts in their obviously abundance of ability to exercise discretion, I mean it's happened to some extent, but I think the guidelines appear to be certainly under great debate and it'll be, I don't want to speculate, but it's not unlike where we were with the crack cocaine guidelines where courts still had to properly calculate the range and then could exercise their Kimbrough power. After considering all of the unique factors of Mr. Cameron's case over the seven years that Judge Woodcock has worked with this case to reach a ultimately now post-Booker reasonable sentence, so we submit that the district court clearly did that in this case. If there are further questions we'll submit on the briefs. Thank you.